and 141091 United States v. Hector Martinez Maldonado. Good morning, Your Honors. Martin Weinberg and Kimberly Holman on behalf of Appellant Juan Bravo-Fernandez. I would ask to reserve two of the ten minutes that have been allotted for this argument. Yes. Thank you, sir. I'm going to address the double jeopardy issue. If I have time, enter into collateral estoppel. Mr. Lowell on behalf of the co-appellant will be addressing both as well. October 25, 2013, the public record of the docket of the District of Puerto Rico in capital letters included an order regarding the judgment issued by this court two days earlier by mandate, four months earlier by opinion in the prior Bravo-Fernandez case. It said the mandate having been issued in accordance with the judgments of the Court of Appeals, quote, a judgment of acquittal shall be entered as to both appellants, as to both the conspiracy counts, and importantly in terms of the double jeopardy issue, as to both defendants section 666 convictions. This order was signed by Judge Pesosa. It appeared to be a clear, unambiguous, unconditional order having all the hallmarks of a final judicial order. It was not issued orally alone. It was not during a hearing. It was not in the state of fluidity. There were no contingencies. It was simply a communication to the public, to the appellants, Mr. Bravo and Mr. Martinez, to their lawyers that Judge Pesosa had entered a judgment of acquittal. Tellingly, the government two hours later in a motion for clarification informed Judge Pesosa, quote, the First Circuit's opinion permits the government to retry defendants Bravo and Martinez on the 666 counts with jury instructions consistent with the opinion limiting the criminal liability to bribery and citing to United States v. Carpenter a 2007 opinion of this court and saying, quote, no double jeopardy bar to a retrial after reversal. The trial as counseled. So three hours later, everyone knows the judge made a mistake. And so it seems like an odd doctrine in the face of the court's own acknowledgement that that judgment of acquittal was not preceded by any legal reasoning, any attempt to try to apply the Court of Appeals decision in just a simple mistake, which he, as soon as it's brought to his attention, he corrects it. It seems an odd doctrine when a judge acknowledges this was just a mistake, that it should preclude a retrial on such significant charges. And that's what distinguishes double jeopardy and the finality accorded historically by both this court and the Supreme Court to the judgments of acquittal in contrast to other judicial mistakes. The Supreme Court has said that no matter how egregious the mistake in farm food and back in those, but those are legal mistakes. I mean, just take the simple case. The judge has two pieces of paper. One says acquittal and one says vacate. And he just gives to the clerk the wrong one. Okay. And then that's entered. And he goes along thinking I just entered my vacate, not acquit. Then he's alerted by the clerk saying, you sure you meant to give the acquit one rather than the vacate? He says no, no, I obviously gave you the acquit. Your position would be double jeopardy at that point? So why is that not this case? Because that's just a pure mistake. My position would be that if the judge gave a correct legal decision or a legal judgment to the clerk who then misenters it. No, he had two pieces of paper. He gave her the wrong one by accident. Because that's not the facts of this. I understand that. I'm asking whether that would count as an acquittal when he just mistakenly gave the wrong paper thinking he had given the right one. If the judge had made a mistake and it was a legal mistake. No, it was just what I said. He's got a piece of paper. One says acquit. One says vacate. He thinks he's giving the vacate paper. He accidentally gave him the acquit paper. The clerk enters the acquit order, calls him and says, you know what, you sure you meant to do that? He says, what are you talking about? Obviously, I gave him the vacate. She said, no, you didn't. I just entered acquit. Does double jeopardy attach? Double jeopardy in my judgment would attach to a judicial mistake. Had the clerk misentered what the judge gave him, rule 36. So even if the judge just completely Scrivener's error, total mistake, you say double jeopardy, that's the end of it. I say double jeopardy because it sends, in this case. What's the case that suggests that? Because the cases you have saying that egregious mistakes are all legal mistakes as opposed to my hypothetical, which is just complete inadvertent error. There is no case that goes as far as the court. So why should we go that far? Because I don't think you have to go that far. I think in this case, if I thought this case was just like the one I gave, why would we have to go that far? I would say respectfully that the factual record would not support that being. I understand that. But just legally, if for you to win, I thought it was that case, what would be the legal reason to go as far as you think we should go, which is to say even a complete inadvertent error, double jeopardy attaches? The legal reason would be what does the public, what does the defendant, and what does the community derive from an order signed by a judge that says order, judgment of acquittal, all counts? It then occurs the government files a motion that deals with the error as substantive legal error that the judge did not understand he needed to be prompted to U.S. v. Carpenter to know that double jeopardy does not prohibit retrial and then three hours later the judge corrects that. We don't know subjectively what occurred during those hours. The judge said it was quote an oversight, but to an objective receiver of that order, there's at least three other options. One option is that the government understood and we could well understand the judge made an error of law. He either read the opinion wrong, he read the mandate wrong, he made an error and therefore was subject to Sanabria, Evans, the cases we have cited that no matter how great, how egregious the magnitude of the reader or the perceiver of the order could well believe that the judge having sat through the first trial knowing now that the only basis for criminal liability under count four and five would be bribery could have sui sponte understood that he did not believe that there was sufficient evidence of bribery on the facts of this case which were consistent with gratuity. So you're suggesting that the judge would have made, just think of the difficulty, we're dealing with the difficulty of trying to analyze how our previous decision applies to the double jeopardy arguments that are being raised here. You're suggesting that the judge would have undertaken that very difficult analysis and then would have entered without any explanation whatsoever a judgment of acquittal on the bribery charges? I mean, that's just not, it's not a plausible, it's just not a plausible argument on its face. Just to add to that before you answer, not even, just adding to the potential implausibility of that and having done so immediately reversed himself with no explanation. In other words, performing that same complicated analysis exactly the opposite way the minute someone says maybe you did it wrong. And our position is that absent contingencies when there is a written order, a final written order that says judgment of acquittal, that sends that message to a defendant who has already, you know, had a prior trial, that the interests of finality and the interests against successive prosecution suggest that that order can be relied on. That an Article III judge entering a judgment of acquittal, whether by error, whether by oversight, that if it's not a clerk's error under Rule 36, it's a courted finality. Does anything turn on the fact that you keep referring to it as an order of acquittal, but technically he said it shall be entered as a line order and then their actual judgment was in fact ordered? Well, it shall be entered, can well be read that a judge is ordering that a judgment of acquittal shall be entered. Which I suppose means it could be read the other way too? It could be read the other way. And so doesn't that take some of the force of your argument about how the public would inevitably receive this? Respectfully, when a line item says from a signed by a federal judge, judgment of acquittal shall be entered, that the defendant, and I think one of the readings of double jeopardy is what can the citizen, what can the defendant rely on? A defendant simply would not believe that a federal judge seeing the mandate, reading the opinion, who thereafter enters a judgment of acquittal that's not the clerk's error, but the judge's, that that is not a rational basis for them to believe their ordeal is over and that the judgment of acquittal is entitled to finality. Can I ask one follow up question on that? Let's say that the case involves a motion by the defendant to enter a judgment of acquittal. And there's argument on both sides. And the judge says, I agree with the defendant and I order that a judgment of acquittal will be entered. Can the government file a motion to reconsider? Only if only if there had previously been a guilty verdict that can be reinstated because the double jeopardy law prohibits fact-finding post-acquittal. Where in this case, of course, post that judgment of acquittal, we're going to have the paradigm of fact-finding. We're going to be faced with a second trial. I guess my time is up. Thank you. So is somebody going to address the collateral stop? Oh, okay. I will only hear about, I'm sorry. Okay. Thanks. Good morning, your honors. May it please the court. I'm Abby Lowell, counsel with Mr. Chris Mann for Mr. Martinez. I will get to the ager. I'd like to answer one or two of the questions your honors posed as to the first issue, just very briefly, please. Judge Barron, I think one of the things that you're worried about is where you draw that line. And I understand that. But you have some very powerful record evidence here where you don't have to worry about the line. And that is, it's not just lawyers who are advocates who understood this to be a final order. Look what happened in that period of time. The probation officers returned the passports to the appellants. The clerk put in an order closing the case. And when a notice of appeal was attempted, it was rejected by the ECF system. It wasn't just that we thought that this was final, the judicial system thought it was final. I don't think you have to worry about precedent when there's a written order after four months of the remand. And one thing that neither has been discussed yet has been that there was an argument that Mr. Martinez, through us, made to the judge right at the end of that first case when the issue of what his dismissal in the first case meant. And we briefed in that part of the motion the issue that we didn't understand what the hubbub was anyway because the double jeopardy clause would prevent this case from being retried as we're about to get in Yeager anyway based on the acquittals that took place in those other counts. So why were we worrying about this part of it when you wouldn't be able to retry it anyway? It was not irrational. And it was not outside the record. And it was not outside the possibility, given that we had briefed that issue, for the judge to have actually said we were right, given the length of time. And again, I just point out what the other people in the judicial system thought about the finality of this order. Let me say one more thing about this issue and move on to Yeager. Imagine, as it was possible, that given that these defendants had been incarcerated before you freed them prior to your opinion, that they had been in jail at the point at which Judge Bessosa entered his order. And we got the order, and we called the prison, and we worked out the fact that they would be released. And they were released. And then three hours later, the judge decides on the urging of the government, oops, I made a mistake, have to haul these people back. What kind of repose and finality is there in the system of what a judgment of acquittal is supposed to mean? And that's the very reason that we put so much emphasis on the finality and on the repose. This was a written order, done twice, in which the words for acquittal were used in a case in which there was precedent within the context for that to be seen as a final order. Let me move on to Yeager. The government doesn't disagree with us that when there is acquittals and the government wants to retry a case, that you have to look to the first case, and in the Yeager case, what the jury acquittals quote necessarily meant. What was precluded? What's the jury acquittal unquestionably terminated petitioner's jeopardy with respect to which issue? The acquittals, which are supposed to be given very strong weight, makes clear that as to these two appellants, and Mr. Martinez in particular, there'd be no question about what the acquittals meant. In every opportunity the jury was given to find that there was bribery, quid pro quo, in exchange for an official act taken as a result of a promise made in order to take some form of gift. And your honors went through this analysis in your first opinions. As you look at the language of count one and count three as to Mr. Martinez, and the jury instructions, which you've pointed out, jury instructions 20 and 22, there's no ambiguity as to what the jury precluded. Because in every opportunity it had to indicate that there had been that formulation of what the government now wants to try as the only thing left, a potential bribery allegation in counts having to do with 666, the jury specifically rejected it as to Mr. Martinez each and every time. Let me put it to you this way. What was contested in the trial? It was not that... Excuse me. You're not saying that the record is that the jury rejected that theory as to the count that the government wants to retry? Both. It turns out both, Judge Howard. Because for Mr. Martinez, the jury had opportunities in all the counts to find bribery. So I'm particularly interested in the specific count. And then it's the specific count. Again, your honors went parsing through how 666 was portrayed in the conspiracy count as a possible object in counts having to do with the Travel Act, as distinct from its standalone allegations in counts five and four. And in 666, the jury had no problem writing no in every opportunity that bribery was linked to 666. If you look at the last two of yours, last review... Is that based on the acquittal on conspiracy? It's based on the... Well, let's parse this through. On counts one, it's based on that the words bribery were linked both in title and in definition to the 666 object in the Travel Act as to 666. Again, it was called bribery in a federal program. Well, just help me on this. There was a 666 count. Substantively counts four and five. Okay. The numbers are going to get me confused. Okay. 666, substantive count. And then there was a conspiracy on 666, right? There was a conspiracy in which there was a potential object. And they said no. And they said no. Okay. So as to 666, we know they convicted, but you would say only on the gratuity theory. That's what it seems like. Now, I would agree. Well, you would say that we would at least... I think the opinion by vacating it says it's at least hard to know whether it was on the gratuity theory or the... I don't think that's what I would read your first opinion to say, Your Honor. I mean, I think this case is unique. We made a point of saying that there was sufficient evidence for the jury to have found with respect to bribery. But the problem is the instruction and the argument permitted a jury verdict on 666 on the gratuity theory. And that's why... That was the error. I don't read your opinion. And again, you wrote it. So you will know it way better than I will to say that you believed and found that there was sufficient evidence. I think you focused on the ambiguity of what the verdict meant. I read your language, and I want... Again, you wrote it, so I won't quote the whole thing. While the language in jury instruction 22 correctly states the requirements of bribery, it was not sufficient to offset the flatly contrary language in the jury instruction 20. This is particularly so because the gratuity theory was offered in the instructions in 666, whereas the correct bribery language was in subsequent global instruction that applied to the two bribery counts. What I was about to say, judges, was that if you look at what was contested at trial, that's very important. Because let's look at what was not contested. It was never contested that there wasn't an agreement between the appellants. It was never contested that the trip occurred. It was never contested that the gifts were given. It was never contested that the legislation was submitted and supported. There was only one thing contested at trial, one thing only. And that was the causal connection between the gifts and the official action. And that's where the difference between the instructions... Was a gratuity theory was the sole basis for the 666 conviction. And I believe that that's... Yes. Yes. Okay. So then on the conspiracy theory, right, when they say no on conspiracy to commit a 666 violation... Why did they do that? Why did they do that? So there's two issues here. One is, if you can, as the court intimated in what I read, look at the verdict form and look at the instructions. You did it before. That's what makes this case unique. Twelve times in that count, I'm sorry, in that verdict form's instruction, they say bribery. It's simply that in count one, when outed getting to count five, the clear roadmap given by the judge at the prompting of the government was that it was different. And count one is a bribery. So is the argument that you're making, that when they acquitted on conspiracy, when they say no on conspiracy for 666, they had to have the non-gratuity theory in mind? Absolutely. And I think you can see that from the way it happened. What would lead us to think that since we know they had the gratuity theory in mind on the substantive offense on your account? Again, I read your opinion in the last time to make clear as I saw, and I objected at the time, that what you've done is created a new possibility in the standalone account that was never adopted. Yeah, I know at the end, as you pointed out, there's something that says you go back, put all the instructions together. Just look at the instructions that mention bribery 12 times in counts one and two, and one time in count 666. Why would we have vacated then? What was to... Because it would have been not timely to do anything else. Why would you have thought that the government would take what was less than a $2,000 bribe for an event that happened two years having been eviscerated in five of its six counts and bring the case again, such that we're now at the point of arguing that it can't be done under the Double Jeopardy Clause? I would have thought that would have happened, and it was premature for you to rule in any way that it was precluded. Secondly, though, as to Mr. Martinez, you have very strong evidence, Judge Barron. They didn't just reject bribery in 666 in count one. They also rejected the Travel Act bribery in count one and in the standalone count, and that was defined the very way in a new trial that a judge would instruct the jury on what bribery meant. It would be the exact same instruction. So for Mr. Martinez, for example, they rejected it not just in counts one, but the standalone bribery. I would ask you in my final response to your question, how do you explain when they were given every opportunity to convict Senator Martinez for bribery quid pro quo, in every iteration it was given to them, it was rejected, and that the only conviction occurred when this gratuity language was injected? And that only happens with respect to the 666 conviction? I'm sorry. In other words, the gratuity language... Only occurs in... And all the other instructions with respect to all the other counts, but the jury would have known that gratuity instruction when they decided those counts, right? Well, if you... They would have heard it. If you do what Yeager and the other courts say, which is you rationalize verdicts, if you look at, as you have pointed out, all the record, the record which you pointed out included the government's rebuttal argument, which exploited them having the last word to inject the word reward 20 times for that count, whereas in the verdict form, bribery is mentioned the equivalent 20. The way to explain what happened, even if you take into account vacated counts as they shouldn't be, as hung counts aren't. But let's get past that. Let's assume you look to try to justify this. It's not an inconsistent verdict because of the gratuity language. You make rational what the jury did. How could it be more rational that if the jury were invited... Now we're at count five. And in count five, by the way, this is what you can do. Bribery is mentioned once in the title, and then the definition is reward after the fact. How is it not clear that that's the roadmap that they took? And that is explainable by the rejection in every other way for the quid pro quo argument, whether it had been a travel act or 666. I think in this case, given this record, and you say you look at the pleadings, the arguments, the title, the verdict form, it's pretty clear what happened. Counsel, it is interesting that a conspiracy requires objectives that are illegal. But it's also a fact that in order to be convicted of conspiracy, you don't have to commit the illegal act. And so arguably, the fact that the conspiracy was not found, the Interstate Travel Act was not found, sort of as a theoretical argument, at least open the possibility, yeah, but the substantive act was still committed, in this case, bribery. But what's unusual here is, I suggest that the substantive, a bribery charge does in fact involve an agreement. I mean, it involves a quid pro quo. It is a different kind of a substantive offense than we usually see with respect to conspiracy charges. And I guess your position is that since the substantive offense contemplates an agreement of some kind, it would be very odd to conclude that there was an agreement with respect to a conspiracy or with respect to a travel act, but not with respect to the bribery. Well, as you did last time, you said it better than I did. And I would only point out that that makes this case the unique case I'm talking about. This distinguishes it. I know I'm over my time. I'm answering your question. The Dre case that you decided here, where you had the conspiracy on mail fraud, but was very clear the problem there was there the agreement was to commit the fraud, but the substantive count was found not guilty because the mailing never took place. But your honor is exactly right. Can't happen that way here.  and the conspiracy requires an agreement. And they acquitted on the agreement whenever it was confronted to them as a quid pro quo. And so consequently, it seems to me that the roadmap is clear as to what happened. And what makes it particularly ironic is that we demanded, asked, begged, pleaded the court not to make those instructions or the verdict form the way they did. And now the court is trying to hoist the uncertainty that they infused into this case as a way of saying, look, it was uncertain. It's not uncertain. Gratuity is what the jury did, your honors. And therefore, when it was bribery, they've already decided not guilty. May it please the court. Vijay Shankar for the United States. Your honors, if I may, I'd like to start with what was just discussed simply because it's fresh on everyone's mind. And that goes to Judge Lopez's question about the so-called oddity here of finding that the defendants committed substantive federal program bribery while finding that they did not conspire to do so. Courts have held consistently that federal program bribery and conspiracy do not merge. Merger is sort of an outdated concept. It's also considered in terms of the so-called Wharton's rule. But courts have said those offenses do not fall under this Wharton's rule where you cannot be found to have committed bribery, which requires an agreement, while not being found to have conspired to do so. Once that's the case, then we have no more than a typical situation where a defendant is found to have committed the substantive offense while being found to have not conspired to commit the substantive offense. There is nothing inappropriate about that. There's nothing improper about that. Courts have said that that is not even inconsistent in the legal sense. Here, I take the defendant's argument to be that it is inconsistent in sort of a logical factual sense. But that's not a problem. We don't probe into why juries might have reached inconsistent factual determinations on conspiracy counts and substantive counts. But are we required in this double jeopardy context to assume that the jury acted in a rational fashion and to try to evaluate how on a standard of rationality these verdicts can be reconciled? We do have to do that, do we not? Your Honor, with respect, we don't. Because we have a conviction on the very count that the government seeks to retry with this court having found explicitly determined that the evidence was sufficient. And with due respect to my colleagues, this court's opinion could not be more clear. And as Judge Barron said, if the court had found anything other than the fact that the evidence and the instructions were sufficient to support a bribery theory, it necessarily would have reversed those convictions instead of vacating them. So if I take your point that you could have inconsistent verdicts suggesting some irrationality, at least logical irrationality, on the part of the jury, and that does not present a double jeopardy problem, what about Mr. Lowell's point that you don't have inconsistent verdicts here, that on this record the verdicts are actually consistent? Are we required to consider that? Or do we just accept that they could be inconsistent and therefore there's no double jeopardy problem? Well, Your Honor, the answer is that to the extent the defendants are seeking to apply collateral estoppel, the burden is on them to show that the jury necessarily found or did not find facts precluding the government from presenting those facts in the second trial. When you have a conviction on the very count that the government seeks to retry, the defendants necessarily cannot meet that burden. Well, why is that? Because I thought Mr. Lowell's argument was that what we've got is a conviction on the gratuity theory, potentially, right? But that's only because of the instruction that pertained to that count. And that when you look at all the other counts, that gratuity problem wasn't present because it was just a pure program bribery claim. And they acquit as to 666 when presented with that claim. So why on that record wouldn't we be entitled to say there is no inconsistency? They got off track because they heard about gratuity with respect to the substantive 666 offense. But when presented with every other manifestation of it, though it wasn't the direct substantive offense, they acquit because in those circumstances they weren't presented with the gratuity. Well, two things, Your Honor. First, the instructions are considered as a whole, both by this court and the court assumes that the jury considers the instructions as a whole. The jury is instructed on the entire case before it proceeds to deliberations. Secondly, the government, and we have this quoted in our brief, repeatedly argued a bribery theory to the jury on the substantive federal program bribery count. That this was a quid pro quo. That this was done in advance. That this was an exchange. In any event... That hurts you, though, doesn't it? For this argument. No, because the jury could have found... This court concluded, and I think the evidence shows, the record shows that the jury just as easily could have found a bribery theory. No, but I mean in the sense that did the gratuity argument get raised in the context of any count other than the substantive 666 account? The gratuity argument in terms of the... Instruction. Did the government argue gratuity with respect to any manifestation of any of these counts other than with respect to the 666 substantive account? Well, I think the record, because this notion of whether 666 covers gratuities or doesn't cover gratuities was not front and center at the trial court. The arguments weren't parsed that way. So this was presented as a basic bribery. Some of the actions took place before some of the agreement took place. Before some of the actions, the agreement took place. After some of the actions... So did the government argue... Would you say the government argued a gratuity theory as to all of the counts? We would. And we would say the government also argued a bribery theory as to all of the accounts. All of the counts. And that's exactly why this court said, and it's in the opinion, black and white, we cannot determine under what theory the jury proceeded. And that's why we are vacating the count. And the court contemplated a retrial. They said if the defendants are retried, the government cannot proceed on a gratuity theory. And we don't intend to proceed on a gratuity theory. But the court clearly understood that a retrial was permissible. And once that's the case, and we have a conviction, and we have evidence sufficient to support the bribery theory, the defendants can be retried. Collateral estoppel simply does not come into play at all. Counsel, let me ask you. I mean, on the notion that sort of the collateral estoppel theory, that the jury necessarily made a finding the first time around that would preclude a trial this time that required them to sort of revisit that issue. I mean, legally, this is a very complex case. Factually, it wasn't all that complicated. I mean, you have the trip to Las Vegas preceded by some official acts by Senator Martinez. Hence, the trip could have been viewed as a gratuity, a reward for acts already taken. You have the trip to Las Vegas. Then you have some official acts taken afterwards, allowing the argument that there was the quid pro quo. There was an understanding that I'll pay for this trip to Las Vegas if you take these official acts. Now, if the jury had taken that latter view of the case, that there was a quid pro quo, how could they possibly have found, with respect to count one, that an objective of the conspiracy was not federal bribery? Or how, with respect to the interstate travel charge, could they have found that an objective of that travel was not federal program bribery? It seems impossible to reconcile the very findings they made with the notion that they did not, in fact, reject the bribery theory. If that's the case, Your Honor, we have inconsistent verdicts. And if that's the case, then we don't rely on any facts that the jury might or might not have found. Why inconsistent? The gratuity theory of conviction makes sense of all of this, doesn't it? It does, Your Honor. It might, Your Honor. But that's not the inquiry that the court engages in when the government is trying to retry on counts on which the defendants were convicted. There is not one single case that I have found, or that the defendants have cited, not one, where the government has been precluded from retrying on convicted charges based on the preclusive effect of acquittals. Not one case. And there are a number of cases all cited in our brief, several from this court, including United States v. Dray, United States v. Citron in the Second Circuit, Price in the Fifth Circuit, where courts have explicitly and adamantly rejected the proposition that the government can be precluded from retrying charges based on acquitted counts. That's just not the law, Your Honor. We can sit here and speculate as to what the jury might or might not have found with respect to the acquitted charges all day long. But that's not the inquiry the court engages in when the defendants have been convicted. That conviction is significant, as this court and other courts have said repeatedly. Can we go back to the line order issue that was raised at the beginning? And they argue that there was some substantive argumentation for an acquittal prior to the entry of the acquittal. And in light of that, whatever might be the case with a complete mix-up, there is at least an ambiguity here as to whether what happened was a mix-up or whether what happened instead was the judge just entered the wrong thing because he got the law, in his view, wrong after being apprised by the government that he got it wrong. What's your answer to that? Maybe before you answer that, if that were the case, in other words, if we thought there was a mix-up in the sense that the judge got the law wrong, entered the line order of acquittal just like this, then the government says, you really mean acquittal? And he says, you know what? That was probably too strong. Changes his mind. Would you agree that double jeopardy should attach then? Well, so is your question that... Let's say it was a legal mistake. It was a legal mistake. He thought what the defendants now are arguing was the right reading of our first decision when we vacated the conviction that the natural consequence of that would be acquittal. So he enters the acquittal. Then he gets apprised by the government. You sure you want to do that? And he says, I didn't realize I guess it was contested. Now I see it's contested. I changed my mind. I'm just going to enter it as a vacate the conviction rather than a quit. OK, suppose we knew that's what the judge did and the judge wrote a little thing saying, gee, I acted too quickly. Would you say double jeopardy attaches in that circumstance or could he correct it even then? It could be corrected even then. Now why would that be? That's just the judge seeming to just take back a legal judgment of acquittal that he thinks on reflection he shouldn't have entered. Right. And that's Smith v. Massachusetts. So again, I'm assuming without conceding at all, because I have a lot of proceeding answers to your questions about why this was not an acquittal in any way, in form, or substance. Nor could the district court have even tried to resolve the factual or legal elements of the case here, the government's case here, at that point in the proceeding for several reasons. One, the Supreme Court case Carlisle says that once a case has gone up on appeal, the district court loses its power to thereafter order a judgment of acquittal when the case comes back. Putting all of that aside, let's say the district court here attempted to and the record shows that it did, in fact, try to resolve the merits of the government's case and enter an acquittal. This is Smith v. Massachusetts. It says that nothing stops an immediate repair of an erroneous announcement of an acquittal, as long as the proceedings have not continued. Whatever immediate or prompt means, I think it... What did it mean in Smith if you just remind me of the facts? Well, in Smith, actually, it didn't happen that way in Smith. Do you know, is there anything that fleshes out what immediate means? I haven't seen any cases that say what immediate or prompt means. But three hours in the evening when nothing else happened, I think certainly qualifies as a prompt correction. And that, again, it's governed by Smith v. Massachusetts. Even if we consider this in some way an announcement of an acquittal, which, again, I do not think we can, Smith v. Massachusetts says it can be promptly corrected. And Smith v. Massachusetts told the government what to do in these situations and that's exactly what the government did here. Smith said in that case, the prosecutors didn't raise anything with the district court until much later, until the case had continued and the defense had presented its case showing some prejudice. Because in presenting its case, the defendants relied on the fact that the district court had earlier announced an acquittal. Counsel, does it matter... This is in response to some points that I guess Mr. Lowell made, that sort of what happens during those three hours when the judgment of acquittal is in place, to take his example, suppose the defendants had been incarcerated and they were released with that. I mean, part of the double jeopardy analysis is, interestingly enough, sort of the experience of the defendants, the sense they have of freedom that their ordeal is now over. I mean, that's one of the values that double jeopardy protects. I mean, if you had a situation like that, would it be very difficult to argue that the court can take it back once the defendants have been released? Well, Your Honor, I think I have two answers to that. One is, while one of the core principles and purposes of the double jeopardy clause is to prevent defendants from constantly feeling like they are under the thumb of the government, that certainly animates some of the double jeopardy principles that the court has announced over the years. That does not mean that something that is not an acquittal in form or substance becomes an acquittal simply because the defendant later says, well, I thought it was an acquittal. But now, my second answer, I think, goes a little more directly to your question, which is, let's assume it was in some way an announcement of an acquittal. Smith v. Massachusetts talks about the ability to correct that, and it talks about the word prejudice. It uses the word prejudice. In that case, prejudice arose because the defendant, as I said, thereafter presented his case in reliance on the fact that he thought he had been acquitted of one count. That's certainly prejudice. Government would agree that a district court can't take back its acquittal in that situation. The situation you present, it's a closer case. The defendants are released from prison. They're out. I hope I'm not conceding anything and binding the government in this situation, but for purposes of this argument, I would probably argue that one could argue that that represents prejudice to the defendants. We don't have that here. They have pointed to nothing they did in reliance in the three-hour period, less than three-hour period. Maybe this is in the record. I assume this must be in the record. Their passports were returned to them. Well, their passports were returned to them, but I'm not sure how that affects the proceedings, how that affects their conduct, how that affects the course of the trial. This was a mistake. The government— Let me just ask one last thing on this. If there's an ambiguity as to whether this is a Smith case or, as you contend, not a Smith case, is there any law that guides us in trying to figure out in the case where it's just unclear from the record which it is, what we're supposed to do in trying to figure out which one it is? Well, I think you're— If I understand your question is, should the court first confront whether this is actually an acquittal or not before proceeding to the question of whether, assuming it's an acquittal, it could have been retracted promptly? And I think— I don't see—I don't know any case law on that. Who has the burden of showing which it is, right? Because on this record, you could say maybe what he did is he made an acquittal, right? We don't have direct evidence that it was clearly a mistake unless we are bound by the district court's representation afterwards that what he did was just make a mistake. Are we bound by that? I don't know if you're bound by that. I think it's strong evidence. I think the totality of the circumstances here in terms of the context, the form, and the substance all weigh very heavily in favor of the argument that this was not an acquittal in form or substance. It was clearly a line order. It reflected a future intention. It was immediately vacated. The district court said it had no desire to enter an acquittal, did not mean to, never resolved the factual or legal merits of the government's case. Clearly, there was no factual or legal resolution of the government's case. And as I argued, the district court could not have sought to resolve the factual or legal merits of the government's case at that point. The government was still entitled to retry these defendants by this court's mandate. And if that's the case, then the court, the district court could not have ordered a Rule 29 before any of that evidence had even been presented. And it could not have relied on the evidence that was presented in the previous trial because it had lost the power to do that. It had lost the authority to do that once the case went up on appeal. And this court simply vacated those counts and found the evidence sufficient. The district court could not, after that, come back and say, I disagree with the Court of Appeals. I'm finding the evidence was insufficient. There's no precedent for that whatsoever. If the court has no further questions, we'll rest on our briefs. Thank you. First, in terms of the collateral estoppel issue, as to Mr. Bravo-Fernandez, there were two special verdicts. Count 1, conspiracy to violate 666, not proven. Count 2, Travel Act 1952, travel to violate 666, not proven. When you look at the instructions, which are in the appendix at 363 to 71, you see the instruction on count 1 simply tells the jury of all of the agreement instructions and then says you must agree that either A, there was a commit bribery concerning federal funds or travel and interstate commerce. The jury said no to bribery, yes to travel and interstate commerce. When the instructions in the next two pages from 666 to 70 were about the 1950- Why can't that just mean, not that I'm trying to guess what the jury was thinking, but why can't it just mean that the jury thought that the intent or the agreement for bribery didn't arise until after the travel? So no conspiracy and no travel. Because the facts were conceded, there was a trip to Las Vegas- My point is that they didn't find the object. Why can't it just be because they decided that the agreement that's necessary for bribery wasn't formed until after? Because to the extent that they were then presented with travel and one of the elements of travel was you need to commit a crime afterwards or thereafter there needs to be a criminal activity, bribery was the criminal activity that the jury found that they didn't travel to commit. Third, that the whole essence of the quid pro quo involves, as Judge Lopez suggested in his questions, two people. There's a corrupt exchange, there's a corrupt quid pro quo, that clearly the count four instructions, which come after the count one and two instructions, were where the judge over objection talked about gratuity and where the government in its rebuttal argument reinforced that instruction, making it probable that the count four verdict was consistent with gratuity. Can I ask you, what would your position be, suppose there was a gratuity instruction on the 666 account, suppose the exact same instruction was given as the conspiracy account and they acquitted on conspiracy, I take it you'd be happy rather than sad if that happened? Well, we would be arguing that the count four having been vacated was a nullity. Well, we vacated it, we vacate that one and then you'd say all that's left is just that when we had vacated the 666, now we want to bring back, they want to bring back the 666 to prosecute it. Wouldn't we just have inconsistent verdicts? You'd have no argument that necessarily on the conspiracy they had acquitted on 666 because the instructions were identical. Yeah, if there was a gratuity instruction that was squarely presented to the jury on counts one and two and count four was not considered a nullity, then we just have inconsistent verdict. And at that point you'd say the government could retry the 666 count? If before the vacating of count four, which gets into the legal issue of whether Yeager would treat a vacated conviction. Right, so putting that to a side, then they could go forward, right? If there was gratuity instructions on counts one and two, that means... Your argument is dependent on us concluding that the only instructions that were in the minds of the jury when they acquitted on conspiracy was a correct instruction with respect to what bribery meant and no gratuity theory was in their mind. I would put it in the Ashby-Swenson language that the most non-hyper-technical, practical, or in the language of this court in Bravo-Fernandez, when it dealt with Judge Besos' decision to uphold a conspiracy despite the special verdicts, that there needs to be an attempt to reconcile the counts. In this case, when you go through the instructions count by count, the gratuity instructions were solely in relation to the substantive 666, and yet the word bribery, over and over and over again, both in the verdict sheet and the instructions, permeated the instructions on counts one and two, and that the most logical, rational, practical way to reconcile the conviction on four, the acquittals on one and two, the acquittals on the same 666 is the gratuity on four, the rejection of bribery on one and two. That rejection of bribery compels the court respectfully to find that count four's retrial on just the bribery is a stop by the principles of Ashby Swenson. Thank you very much. Thank you all. Well, you didn't. Well, no, you didn't, but what would you like to talk to us about? I'm sorry, I thought I had it. That's all right. I will take this three points. There are very few things I'm certain of, that's one of them. And somebody should have kicked me and jumped up and said, I told you to reserve those two minutes. I thought about it. Let me just say as to the Yeager issue, to answer your question first, the reason you know that that's not possible was the rejection of the travel act as to Mr. Martinez, which was also ground in bribery. So you can't say that you could parse it because when they were given the choice, both as the objects and substantive on bribery, well-defined in instruction 22, they said not guilty. I think think of it this way, to answer your question to my co-counsel. What if, for whatever reason, the government had not charged a substantive 666 count, but it made 666, Travel Act, Hobbs Act, or whatever, the objects of the conspiracy. And we had the same verdict we have. And now they say, oops, now I figured out that there's really grounds to bring 666. In other words, if you take Yeager's point that you ignore the vacated count because it's not even in your mind, now they want to bring it. Given what happened in the counts 1 and count 2 and count 3, you'd say, wait, you can't do that because bribery was confronted as the object of 666 is one of them. It was never a gratuity argued. Therefore, they rejected bribery. You can't bring a bribery count now. So you're sort of around in a circle as to whether it's better or worse to have the charge. If you charge conspiracy, they acquit on conspiracy, you're precluded from then bringing the substantive offense later? Well, I guess you could be in the case in which there's some of the flaw to why the substantive count, like in the mail fraud, the mail wasn't used. But as Judge Lopez pointed out, that's hard to imagine in a case in which the government argues what it did. And to answer one of your questions, I think it was your question to the government, did they argue? Well, you've pointed out that it was in that rebuttal, their last point in front of the jury where all of a sudden, this reward language for that counts 4 and 5 got mentioned 20 times as a way for the jury to do what it did. The problem for you is that preceded every verdict. Say that again, I'm sorry. That argument preceded every verdict and thus potentially was in the mind of the jury when they made every verdict. That's the problem. Of course. But if you then look at the transcript and see that it was really an as to counts 4 and 5 or as to 666, let me tell you this. You ask, did they argue gratuity for all the others? All you have to do is look at the verdict form and the jury instructions. And I already pointed out in one of those instructions, it was 20 times bribery mentioned. And I am over my time. So the last word on the issue of the acquittal is this. You asked what the grounds were. Well, the judge struggled to find some way to justify his being tweaked by the government to fix it. And he used rule 36, which doesn't apply and the government doesn't even say it applies. But there is no legal basis to undo a written order of acquittal, put on the docket, the clerk so does, designs it, designates it, all the ramifications of the probation officer occurs. The fact that they're struggling to find a way to justify a court doing it shows that in this particular framework, there isn't a vehicle to do what the judge does. You will never find a case in which a judge twice enters a judgment of acquittal and then tries to take it back as in this case. Thank you.